**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00643-(CKK)** |
| **v.** | : | |
| | : | |
| **WILLARD THOMAS BOSTIC, JR.** | : | |
| **aka TOM BOSTIC aka** | : | |
| **WILLIAM THOMAS BOSTIC, JR.,** | : | |
| Defendant | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Willard Thomas Bostic, Jr. aka Tom Bostic, aka William Thomas Bostic, Jr. to 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

**I.        Introduction**

Defendant Willard Thomas Bostic, Jr. (W. Bostic), a 57-year-old, retired Chief in the Navy, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars' in losses.

Defendant W. Bostic pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of to 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution is appropriate in this case

because (1) W. Bostic was aware of the violence and property destruction at the Capitol, but still breached the building; 2) he has shown no remorse for his actions; and 3) after the riot, he suggested to his friend that people should repeat storming the Capitol.

The Court must also consider that W. Bostic's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who tried to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, because of W. Bostic's lack of remorse and suggestion that the Capitol should be stormed again, a sentence of probation is not warranted. The facts of and circumstances of W. Bostic's crime instead support a sentence of 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7.

### *Defendant W. Bostic's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, W. Bostic traveled with his daughters Meghan Rutledge (Rutledge), and Karegan Bostic (K. Bostic) (collectively, "the Defendants") from Chesapeake, Virginia to Washington, D.C., via automobile. ECF 68, Statement of Offense, ¶ 8. Upon his arrival, W. Bostic texted a friend and proclaimed, "THE SAUCE! FRAUD IS HERE! WE WON MOTHERFUCKERS! PROOF OF THE CABAL AND THE THEFT OF OUR ELECTION". Later that morning, the Defendants attended the "SAVE AMERICA RALLY" at the ellipse where former President Trump spoke.  ECF 68, Statement of Offense, ¶ 8.

2

After attending the rally, the Defendants walked to the Capitol. W. Bostic claimed that they walked there because President Trump said he was going to walk to the Capitol with those at the rally at the ellipse. *Id*. at ¶ 9.  The trio walked to the Capitol with a massive crowd of people who waved flags and chanted. The Defendants were captured in an open-source video marching to the Capitol. *See*

https://web.archive.org/web/submit?url=https://video.parler.com/y4/K5/y4K5OwDPuupA.mp4



***Image 1 depicts the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) marching to the Capitol Building in a video located at*** https://web.archive.org/web/submit?url=https://video.parler.com/y4/K5/y4K5OwDPuupA.mp4

One of W. Bostic's friends, who apparently was not at the Capitol, texted W. Bostic updates from news reports on activity that was occurring at the Capitol on January 6th.  W. Bostic's friend reported: 1) "news max reporting a bomb scare near capitol and people storming the capitol"; and 2) "people running and beimg [sic] pointed to go".

| ↑ Timestamp | From | To | Body |
|---|---|---|---|
| 1/6/2021 1:48:35 PM(UTC-5) | From: + ███ 3565 | To: ███ 6514 (owner)<br>To: ███ 6514 (owner) | i think he needed to do it before the counts started but they are in debate... not sure what is goimg on. p... |
| 1/6/2021 1:53:27 PM(UTC-5) | From: + ███ 3565 | To: ███ 6514 (owner)<br>To: ███ 6514 (owner) | news max reportimg a bomb scare near capital and people storming the capital....? |
| 1/6/2021 1:59:10 PM(UTC-5) | From: + ███ 3565 | To: ███ 6514 (owner)<br>To: ███ 6514 (owner) | people running and beimg pointed to go?????? |

***Image 2 is a digital report of the texts that W. Bostic's friend sent to him warning that there was a bomb threat near the Capitol, and that people were storming the Capitol, and being told to leave.***

Based on his friend's reports alone, W. Bostic and his daughters should have avoided the Capitol grounds.  They, however, were not deterred and continued to the Capitol. By 2:00 PM, rioters forced their way through the barricades on Capitol grounds, and the police were forced to retreat while the crowd advanced to the exterior façade of the building. ECF 68, Statement of Offense, ¶ 5. The Defendants advanced to the Upper West Terrace of the Capitol and stood on the stairs of the Capitol with other rioters who had overrun this restricted area. As part of his guilty plea, W. Bostic admitted that the Defendants "were present when members of the mob gathered on the West Front at the inaugural stage and Upper West Terrace." ECF 68, Statement of Offense, ¶ 11.



***Image 3 depicts the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) on the West Front of the Capitol.***

The Defendants then climbed the scaffolding of the Inaugural Stage, which is adjacent to the Northwest stairs where police were overrun by rioters.  From that vantage, the Defendants surely had a bird's eye view of other rioters fighting with the police.

**Image 4**          **Image 5**          **Image 6**



*Image 4 is a picture Rutledge took of W. Bostic (circled in red) on the Inaugural Stage scaffolding at 2:24* PM*.  Image 5 is a picture she took of the same area at 2:25* **PM** *capturing a view of the West Front shortly after rioters overran the police there, and Image 6 is a photo of rioters advancing up the Northwest stairs after they overran the police there.*

Besides the text from W. Bostic's friend and the view from the scaffolding and the Northwest stairs of other rioters, there were other obvious signs that should have warned the Defendants not to enter the Capitol Building. For instance, before the Defendants breached the Capitol, several rioters were visibly standing on ledges of the building directly above the Defendants.



*Image 7 is a photo taken at approximately 2:35 PM by Rutledge of rioters (circled in green) on the Capitol Building.*

In fact, on the day of the riot, Rutledge affirmed in a text message to a friend that she and her sister K. Bostic (and presumably W. Bostic, since the Defendants were all together throughout their time in and around the Capitol) witnessed flash bangs, rioters who "broke windows to get inside of the capital [sic] building", and the use of tear gas by police against rioters, including the sisters themselves. Specifically, Rutledge recounted the following:

> I'm so irritated bc I said to my sister when we began approaching the capitol building and everyone started climbing over the wall that they were going to bastardize this on the news ... and sure enough they did ... Everyone was very kind and helpful to each other especially when it came to helping out the elderly who were **tear gassed and flash banged** amongst the crowds. The camaraderie was amazing however the media is only showing tiny clips of what they want you to see. When walking back to the car we could hear everyone's conversations around us saying the same thing about how there was absolutely no violence **other than when they broke the windows to get inside of the capital building** but no violence amongst eachother [sic] and also everyone was looking out for the police who were just doing their jobs.
>
> *******
>
> I didn't break anything and I was tear gassed repeatedly so yes the news especially today was just really deceiving ... the only thing I witnessed that I personally just didn't feel right about was **breaking down doors and busting through windows of the Capitol Building** but even then no one intended on hurting anyone.

*Instant message Rutledge sent on January 6, 2021 at 8:57 PM.* (emphasis added)

Notwithstanding those warnings of violence, at approximately 3:12 PM, the Defendants breached the U.S. Capitol Building through the Senate Wing door, an area with a blaring alarm and broken windows that rioters were climbing through. Given his service in the United States Navy spanning more than a decade, W. Bostic surely recognized that he and his daughters should not enter this building.  Nonetheless, W. Bostic breached the Capitol building.  He texted a friend and said, "we are in" . . . "we are inside".  W. Bostic admitted that, "[w]hile there amongst individuals from the Trump rally and others demonstrating regarding the certification of the election results, I enter[e]d the vestibule of the senate wing door being sympathetic to a cause with others . . . ."  ECF 85, Presentence Investigation Report, ¶ 37.



***Image 8 depicts the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow),
and Rutledge (circled in blue) breaching the Capitol Building through
the Senate Wing door at approximately 3:12 PM.***



| ↑ Timestamp | From | To | Body |
|---|---|---|---|
| 1/6/2021 2:49:15 PM(UTC-5) | From: + ███ 03565 | To: ████ 6514<br>████ 6514 | the way they work, seems like what i have sen from anifa, ill bet that them |
| 1/6/2021 2:52:16 PM(UTC-5) | From: + ███ 66514 | To: ████ 5541<br>████ 6514 | Come on up |
| 1/6/2021 2:55:41 PM(UTC-5) | From: + ███ 66514 | To: ████ 5541<br>To: ████ 6514 | We are  In |

*Image 9 is a digital report of a text in which W. Bostic tells his friend that he is in the Capitol Building.*

Once inside of the Capitol Building, the Defendants took several photos of themselves in the Senate Wing.

**Image 10**                                **Image 11**



*Images 10 and 11 depict the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) in the Senate Wing with other rioters.*

After taking photos, the trio left the Capitol Building through the Senate Wing door at approximately 3:16 PM.  The group found their friend (who apparently did not go into the Capitol building), went to their car, and drove back to their homes in Virginia.  ECF 85, ¶ 28.

On January 6, 2021, Rutledge commented on the Defendants' time at the Capitol, stating, "[a]fter miles and miles of walking and climbing and climbing some more we made it inside the capitol building. What an experience for the books".



***Image 12 is a post that Rutledge made to Facebook commenting on the defendants' breach of the Capitol.***

On January 9, 2021, W. Bostic texted with a friend that "people need to storm the capitol", apparently feeling no remorse for storming the Capitol just three days prior to this exchange. This exchange is shown in Image 13 below, with telephone numbers redacted, and W. Bostic's comment to "storm the capitol" highlighted in blue.



| | Timestamp | Delivered | Read | From | To | Body |
|---|---|---|---|---|---|---|
| | 1/9/2021 3:21:54 PM(UTC-5) | | | From: + ████ 03565 | ████ 03565 66514 | That's Biden |
| | 1/9/2021 3:22:17 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | thought i recognized |
| | 1/9/2021 4:25:39 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | was that in the files or did some one send that? |
| | 1/9/2021 4:26:39 PM(UTC-5) | | | From: + ████ 03565 | ████ 03565 | Those files are old that's from Biden's laptop |
| | 1/9/2021 4:27:29 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | i was hust out and about and got home, are you... |
| | 1/9/2021 4:27:59 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | They knew this through the coverup |
| | 1/9/2021 4:28:21 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | ass holes kept that shit wrapped up |
| | 1/9/2021 4:28:27 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | That's what trump was talking about the laptop |
| | 1/9/2021 4:28:43 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | Media called it fake |
| | 1/9/2021 4:29:04 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | There's a lot of sick shit on there |
| | 1/9/2021 4:29:10 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | i think it needs to be sent to them and carbon co... |
| | 1/9/2021 4:29:59 PM(UTC-5) | | | From: + ████ 66514 | ████ 03565 | I think people need to storm the capital |
| | 1/9/2021 4:30:15 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | Den of vipers |
| | 1/9/2021 4:31:05 PM(UTC-5) | | | From: + ████ 03565 | ████ 66514 | and they are biting hard about the capital shit, th... |

***Image 13 is a text exchange on January 9th in which W. Bostic suggests that "people need to storm the capitol".***

### *The Charges and Plea Agreement*

On October 13, 2021, the United States charged W. Bostic by criminal complaint with Entering or Remaining in any Restricted Building or Grounds in violation of 18 U.S.C. §§ 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).  On October 12, 2021, the FBI contacted W. Bostic and informed him that a warrant had been issued for his arrest. The next day, W. Bostic surrendered to the FBI's Chesapeake, Virginia office, but refused to interview with the FBI. Even as late as November 8, 2022, when Probation interviewed W. Bostic, he still did not express genuine remorse for his conduct on January 6th. ECF 85, ¶ 37

On June 6, 2022, the United States charged W. Bostic by a 4-count Information with violating 18 U.S.C. 1752(a)(1) and (a)(2) and 40 U.S.C. 5104(e)(2)(D) and (e)(2)(G). On October 25, 2022, pursuant to a plea agreement, W. Bostic pleaded guilty to Count 4 of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, W. Bostic agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

W. Bostic now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, W. Bostic faces up to six months of imprisonment and a fine of up to $5,000.  W. Bostic must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 90 days home

detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40 (TNM), 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing W. Bostic's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like W. Bostic, the absence of violent or destructive acts is not a mitigating factor. Had W. Bostic engaged in such conduct, he would have faced additional criminal charges.

A particularly aggravating feature of W. Bostic's offense is that he entered the Capitol Building even though it was clear that a riot was occurring inside and outside of the building. Particularly as a former Naval officer, this should have been obvious to him. Nonetheless, W. Bostic entered and remained in the building and took photos with his daughters. The Defendants stayed in the Capitol for less than ten minutes, which is a mitigating factor. But just three days after the riot, W. Bostic showed no remorse for his actions at the Capitol. To the contrary, he suggested to his friend that people should storm the Capitol again in protest of alleged acts by President Biden.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### B.  The History and Characteristics of W. Bostic

As set forth in the PSR, W. Bostic's criminal history consists of a pending Driving While Intoxicated and Possession of Schedule IV drugs charge stemming from a November 22, 2021 arrest in Virginia.  ECF 85, ¶ 44.

W. Bostic was honorably discharged from the United States Navy on November 30, 2011, after having achieved the rank of Chief. He began his military service on December 5, 1989.  While W. Bostic's military service is laudable, it renders his conduct on January 6 all the more troubling. As a former member of the uniformed Armed Services, W. Bostic understood better than many that the Capitol was under siege by rioters that day. His voluntary decision to storm a guarded government building is nothing short of shocking considering his former military service and training. In this case, W. Bostic's conduct demonstrates a very real need for specific deterrence.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

13

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Just three days after the riot, W. Bostic suggested to his friend that people should storm the Capitol again.  That shows a total disregard for the illegality that occurred at the Capitol, and suggests that if provided the opportunity, W. Bostic would repeat his actions. Moreover, W. Bostic has shown no remorse for his actions. A sentence of home-detention, as part of a term of probation is warranted to deter this conduct.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[1] This Court must sentence W. Bostic  based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

W. Bostic has pleaded guilty to Count 4 of the Second Superseding Information, charging him with Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.   § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than

---

[1] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of

minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of 90 days home detention as part of a 36-month term of probation, will not create an unwarranted disparity with a sentence of probation

only, at the bottom.  *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, three cases are comparable. Just two months ago, on December 22, 2022, this Court sentenced a January 6th defendant in a similar case -- United *States v. Hendrix*, 21-cr-426-CKK.  Hendrix was an Army veteran. ECF 41, Gov. Sentencing Memorandum, at 21.  He entered the Capitol through the Columbus doors and was inside and recorded videos for about 90 seconds, despite clear indications that he was not supposed to be there (alarms, tear gas, cries of "let us in", resistance from officers).  After exiting, Hendrix considered re-entry until tear gas drove him away.  *Id*. at 2. Hendrix later agreed to a pre-arrest interview with the FBI and provided access to images from his phone and to clothing he wore on January 6.  *Id*. at 15- 16. At sentencing, he expressed remorse.  This Court sentenced Hendrix, who pleaded guilty to violation of 40 U.S.C. Section 5104(e)(2)(G), above the government's recommendation to 30 days' incarceration followed by a 3-year term of probation. ECF  46 (Judgment) at 2- 3.

*United States v. Gruppo*, 1:21-cr-391 (BAH) also involves a rioter who observed chaos and clear indications not to enter the Capitol Building but did so despite those signs. Gruppo, an Army veteran, who rose to the rank of Lieutenant, breached the Capitol Building through the Senate Wing door at approximately 3:00 p.m., 12 minutes before W. Bostic breached the same door. Gruppo exited the Capitol seven minutes later through the Hall of Columns.  ECF 20, Statement of Offense, ¶ 8.  Gruppo admitted to seeing rioters scaling the retaining walls and staircase to the Upper West Terrace, and likely would have heard the deafening sounds of flash bangs exploding as rioters at the Lower West Terrace clashed with the police. ECF 24, Gov. Sentencing Memorandum, at 6. Gruppo, like W. Bostic, also would have seen the broken glass, from the windows rioters smashed when they breached the Capitol Building. *Id*. at 7. *See also supra* at Image 8 showing rioters climbing through the broken Senate Wing windows as W. Bostic entered the Capitol. The Court sentenced Gruppo to 90 days home detention as part of a twenty-four (24) month term of probation, $500.00 restitution, and $3,000.00 fine.   ECF 32 (Judgment) at 2, 5. W. Bostic's conduct warrants a similar sentence.

In *United States v. Fox*, 1:21-cr-435 (BAH), Fox breached the Capitol by climbing through one of the Senate Wing windows, the area where W. Bostic entered. Fox remained in the Capitol for less than two minutes, while W. Bostic remained inside for four minutes. Both Fox and W. Bostic, however, did not leave until they took photos while in the Senate Wing. Fox also admitted that he witnessed rioters breaking a window at the Senate Wing, and he posted that image to Facebook. ECF 33, Government's Sentencing Memorandum, at 6. Fox also failed to express remorse for his actions, declaring that in terms of breaching the Capitol, "I'd do it again." *Id*. at 10. Similarly, W. Bostic suggested that people should storm the Capitol again. Fox was sentenced

to 2 months of home detention as part of a 36-month term of probation, and a $2,500 fine. W. Bostic's actions are comparable to Fox's and warrant a similar sentence.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ Anthony L. Franks
Assistant United States Attorney
Bar No. 50217M O
601 D Street, N.W
Washington, DC 20530
anthony.franks@usdoj.gov
(314) 539-3995

## CERTIFICATE OF SERVICE

On this 22nd day of February 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

s/ Anthony L. Franks
Assistant United States Attorney
Bar No. 50217M O
601 D Street, N.W
Washington, DC 20530
anthony.franks@usdoj.gov
(314) 539-3995